## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CATHOLIC DIOCESE OFWILMINGTON, INC., | ) ) | |
| | ) | |
| | ) | Case No. 09-13560 (CSS) |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | ) ) | Adv. Proc. No. 09-52866 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CATHOLIC DIOCESE OF WILMINGTON, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION[1]

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
John T. Dorsey
Neilli M. Walsh
Mary F. Dugan
Patrick A. Jackson
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Counsel for Defendant/Debtor Catholic
Diocese of Wilmington, Inc.

ASHBY & GEDDES
Stephen E. Jenkins
Philip Trainer, Jr.
Toni-Ann Plantia
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

Counsel for Non-Debtor Defendants

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

PACHULSKI STANG ZIEHL & JONES, LLP
James I. Stang
Kenneth H. Brown
Gillian N. Brown
Elissa A. Wagner
Curtis A. Hehn
919 North Market Street, 17th Floor
Wilmington, DE  19899-8705

Counsel for the Official Committee
Of Unsecured Creditors

Dated: July 21, 2010

Sontchi, J._____

## INTRODUCTION

The Catholic Diocese of Wilmington, Inc. (the "Debtor") is the debtor in this

Chapter 11 case.  Among its many activities, it operates a pooled investment program

on behalf of the Diocese.[2]  The Debtor operates the program through an account (the

"PIA") in the Debtor's name. Numerous entities affiliated with the Diocese have

deposited, in aggregate, approximately $75 million in the pooled investment program.

The Debtor and the investors have taken the position that the investors' deposits in that

account are held by the Debtor in trust for the benefit of the investors and, thus, the

money is not property of the Debtor's estate.

The Official Committee of Unsecured Creditors filed an adversary proceeding

seeking, among other things, a declaration that (i) a valid trust does not exist with

---

[2] The Court draws a distinction in this matter between the Roman Catholic Diocese of Delaware (the "Diocese") and the Debtor.  The Diocese is not a legal entity, but, rather, an ecclesiastical entity under Canon law.

2

respect to the PIA; and (ii) the alleged trust funds cannot be traced. The Court held a four-day trial with respect to these issues.

On June 28, 2010, the Court issued an opinion finding that the Non-Debtor Defendants'[3] money in the PIA is held by the Debtor in a resulting trust on their behalf.[4] Nonetheless, applying the lowest intermediate balance test, the Court found that the defendants failed to meet their burden of tracing those funds. Thus, with one exception, the Court found that the entirety of the PIA is property of the estate.[5]

On June 29, 2010, the Non-Debtor Defendants filed a motion for reconsideration.[6] Briefing is complete. This is the Court's ruling on the motion.

---

[3] The Non-Debtor Defendants consist of: St. Ann's Roman Catholic Church; St. John the Beloved Roman Catholic Church; Holy Spirit Roman Catholic Church; St. Thomas the Apostle Roman Catholic Church; St. Francis De Sales Roman Catholic Church; Diocese of Wilmington Schools, Inc.; Catholic Cemeteries, Inc.; Siena Hall, Inc.; Children's Home, Inc.; Seton Villa, Inc.; Catholic Youth Organization, Inc.; and Catholic Diocese Foundation. In aggregate, the Non-Debtor Defendants have approximately $75 million on deposit in the PIA.

[4] *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, --- B.R. ----, 2010 WL 2594260 (Bankr. D. Del. June 28, 2000). On July 19, 2010, the Court entered an order and a final judgment implementing its findings of fact and conclusions of law set forth in the Opinion (Adv. D.I. 128 and 129, respectively).

[5] St. Ann's Roman Catholic Church ("St. Ann's") was able to trace its funds. Thus, the Court found that its investment is not property of the estate. *Id*. at *19.

[6] On the same day, the Debtor joined in the motion. The Court notes that the Debtor did not file an opening brief but did file a reply. This is procedurally improper. Nonetheless, the Court considered the reply brief in making its ruling on the motion for reconsideration. The Debtor's argument in its reply brief rests entirely on the assertion that the Committee did not meet its burden of proof. As set forth in the Opinion, however, it is the defendants not the Committee that bear that burden. *Id*. at *7. *See also Id*. at *7 n. 19. ("The Court appreciates that is unusual to place the burden of proof on a defendant in an adversary proceeding. The Court instructed the Committee to file this adversary proceeding for purposes of making a final determination as to whether the investors' money is property of the estate. Frankly, the Court did not consider which party would bear the burden of proof in requiring the Committee to initiate the adversary proceeding. Rather, the Court was seeking to craft a procedure for resolving the issue. Thus, the Court is somewhat abashed to admit that it is responsible for the anomaly and, with its apologies to the parties, it will now place the burden of proof on the parties bearing it under the law, i .e., the purported trust beneficiaries.").

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b).

## GOVERNING STANDARD

Federal Rule of Civil Procedure 59(e), made applicable to this adversary proceeding pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure, governs motions for reconsideration.  A motion for reconsideration may be granted where (i) there has been an intervening change in controlling law; (ii) new evidence has become available; or (iii) there is a need to prevent manifest injustice or to correct a clear error of law or fact.[7]  The Court should reconsider a prior decision where it appears it has overlooked or misapprehended some factual matter that might reasonably have altered the result reached by the Court.[8]  While it is true that a motion for reconsideration should not be used to reargue the facts or applicable law, it is appropriate when the facts were presented but overlooked by the Court.[9]  The defendants assert that this is the case here.

---

[7] *In re W.R. Grace & Co.*, 398 B.R. 368, 373 (D. Del. 2008) (citing *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

[8] *Karr v. Castle*, 768 F.Supp. 1087, 1093 (D. Del. 1991), *aff'd*, 22 F. 3d 303 (3d Cir. 1994).

[9] *In re Chama, Inc.*, 2000 WL 33712473, at *1 (Bankr. D. Del. Sept. 21, 2000).

## THE MOTION FOR RECONSIDERATION MUST BE DENIED[10]

In attempting to meet their burden of identifying and tracing the funds deposited in trust with the Debtor, the defendants argued that the Court should look solely to the Debtor's accounting records, which meticulously recorded the investors' share of the funds in the PIA.  The Court declined to do so, noting that the defendants' argument ignored the fact that the trust funds were deposited and withdrawn from the operating account and not the PIA.  The Court held that the "defendants must identify and trace the trust funds (i) to and from the operating account; and (ii) between the operating account and the PIA," which they did not and could not do because no such evidence exists.[11]  Nonetheless, the Court did find that St. Ann's met its burden of tracing its funds because it established at trial that its funds were deposited directly into the PIA and the PIA balance never fell below the amount of its deposit after it was made.[12]

In the motion for reconsideration, the defendants assert that the Court ignored the fact that the bulk of the funds in the PIA (not just those of St. Ann's) had been deposited by the investors years if not decades ago.  They further assert that "a significant portion of the Non-Debtors' funds within the PIA, just like those held by St. Ann's, never even arguably passed through the Debtor's operating account."  More specifically, the Defendants assert that several of the investors had significant sums of

---

[10] For a complete recitation of the facts the Court refers the reader to the Court's opinion, the entirety of which is incorporated herein by reference. *See In re Catholic Diocese of Wilmington, Inc.*, 2010 WL 2594260, at *1-7.

[11] *Id.* at *16-19.

[12] *Id.* at *19.  The Court also found that the defendants met their burden of establishing that a resulting trust exists in this case and that the funds transferred to the Debtor from the investors (a.k.a. trust beneficiaries) are, in fact, trust funds. *Id.* at *7-9.

money in their own endowment accounts prior to their election to participate in the PIA and any contributions made to their accounts since their initial deposits have been *de minimis*, at best.[13]

The defendants have the burden of establishing the manner in which all deposits and withdrawals were made.[14]  Their attempt to meet that burden by arguing what "must have happened" over the last 30 or so years is not persuasive.  The testimony upon which the defendants rely was qualified with phrases such as "unlikely," "my guess," "don't know for certainty," and "don't know whether."  Such testimony is of no probative value.  Moreover, the "hard" evidence in the record refutes the defendants' argument.

- The defendants could only track transactions into and out of the PIA for the *last five years*.[15]

---

[13]  The defendants cite to the following passage in the transcript:

> Q. And as you sit here today, you don't have any idea how much, if anything, was directly transferred by the corporation and how much was transferred first through the debtor's operating account, do you?

> A. I know the [Foundation] investments at the time transferred were about seventeen million dollars, which far exceeds what the debtor had at the time.  So *it's unlikely* that that amount could have gone through the operating account, because it was too significant an amount.  *My guess* is that that went through a transfer directly to the custodian.

Testimony of Joseph Corsini, Trial Tr. 41:1-10, June 4, 2010 (emphasis added).  *See also id.* at 39:6-14 ("*I don't know for certainty* when the investments that were previously held by the foundation [sic], by Cemeteries, by Charities, Siena Hall, Seton Villa, when the decision was made to include in the pooled investment program – *I don't know whether it came through the operating account*, which I would *probably* think it didn't happen that way.  I would *suspect* that there was a custodial transfer directly to . . . whoever the custodian was at the time.") (emphasis added).

[14]  Notwithstanding that the Committee is the plaintiff in this case the Court held that the defendants have the burden of proof.  *See* n. 6, supra.

[15]  The testimony at trial was:

> Q: Utilizing the information in the binders, then, it's possible to track all transactions into and out of the PIA for the last five years?

- The defendants offered *no testimony* regarding how the original investments were placed in the PIA.  In fact, a majority of the witnesses were not on the individual defendant's boards when the "original funds" were placed in the PIA.[16]

- The testimony at trial reflected that the same basic system of tracking deposits and withdraws into the PIA *had been in place for "quite some time."*[17]

In short, the defendants did not present any evidence establishing the existence of any mechanism by which funds were deposited and withdrawn from the PIA and/or its predecessors *other than through the operating account*.[18]

The defendants failed at trial to address the questions that must be answered in order for them to prevail.  When did the deposits and withdrawals occur?  How large were the deposits and withdrawals?  Did they flow directly into the PIA or through one

---

A. Yes.

Q. Why did you go back only five years?

A. Two reasons.  Reason one, the starting point was information that Mellon Bank had provided to us, and it was readily available for a five-year period in the format that we wanted.  To do more than five years, we'd have to reformat it, and it would take some effort to do that.

Additionally, the supporting records, we're looking at cancelled checks and payment vouchers and deposit slips that our record retention policy says we keep for six years.  I think we have a couple years more than that.  Unfortunately, the information was stored in a damp basement and hard to – hard to deal with.  And we thought five years was sufficient enough.

Testimony of Joseph Corsini, Trial Tr. 48:18 - 49:9, June 2, 2010.

[16]  Testimony of Mark A. Christian, Trial Tr. 109:21-24, June 3, 2010; testimony of Patrick Donovan, Trial Tr. 123:1-3, June 3, 2010; Testimony of Rev. Edward M. Aigner, Trial Tr. 165:2-10, June 3, 2010; Testimony of Catherine P. Weaver, Trial Tr. 192:18-193:9, June 3, 2010; Testimony of Richelle Vible, Trial Tr. 217:24-219:8, June 3, 2010; and Testimony of Justice Joseph Walsh, Trial Tr. 67:17-25, June 4, 2010.

[17]  *See* Testimony of Joseph Corsini, Trial Tr. 41:20-44:25, June 4, 2010.

[18]  There is evidence in the record that St. Edmond's Roman Catholic Church made a direct deposit of $10,000 into the PIA.  As that parish is not a party to the adversary proceeding the Court made no finding relating to that deposit.  The funds in the PIA are presumptively property of the Debtor's estate. Nonetheless, the right of any person that is not a party to this adversary proceeding to argue that any amounts it deposited into the PIA are not property of the estate are fully preserved.   That person, however, bears the burden of proof in seeking relief from the Court.  *See In re Catholic Diocese of Wilmington*, 2010 WL 2594260, at *19 n. 93.

or more other commingled accounts?  Did the balance of the PIA ever drop below the amount of the deposits or even to zero?  How were any transfers between custodial accounts accomplished?  The absence of evidence in the record on these points means that the party with the burden of proof, i.e., the defendants, cannot make their case and must lose.[19]

The Court considered the entirety of the evidence presented in the case. Nonetheless, it ruled that the defendants had failed to meet their burden of tracing the funds.  The defendants have not identified any evidence presented but overlooked by the Court that might reasonably have altered the result.  Thus, the motion for reconsideration must be denied.[20]

The Court will issue an order.

---

[19]  The Non-Debtor Defendants argue in their reply brief that the Committee failed to establish that the funds in the PIA were commingled with the Debtors' funds.  It is the defendants' burden not the Committee's to prove that funds in the Debtor's custody and control are not property of the estate.  This includes proving that the funds were not commingled.  They failed to meet that burden.  In addition, although it is somewhat unclear, it appears that the Non-Debtor Defendants are also arguing that the Committee's action, in part, is barred by laches.  To the extent they are making this argument, it was raised for the first time in the reply brief.  This, it was not considered by the Court.  *Rodriguez-Tevez v. AG of the United States*, 2010 U.S. App. LEXIS 9967, at *3 n.1 (3d Cir. May 14, 2010) ("Because Rodriguez-Tevez did not challenge the BIA's denial of his due process claims in his opening brief, these claims are waived."); *and Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief . . ."). See also *Nagle v. Alspach*, 8 F.3d 141, 144 (3d Cir. 1993) ("raising a new issue in a reply brief is untimely and insufficient to preserve an issue for review."); *Am. Home Mortg. Corp. v. First Am. Title Ins. Co.*, 2007 U.S. Dist. LEXIS 83337 (D.N.J. Nov. 8, 2007) ("Because Defendant raises this issue for the first time in its reply, the Court will not consider this argument."); *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 1307898, at *2 (D.N.J. Jan. 12, 2007) ("A moving party may not raise new issues . . . in a reply brief that it should have raised in its initial brief. The reason for not considering new bases for relief raised for the first time in a reply brief is self-evident: No sur-reply is permitted, so the opponent has no opportunity to address the new defense" (internal citations omitted)).

[20] As stated in the Opinion, the Non-Debtor Defendants still have a claim against the Debtor for their lost investment.  That claim, however, will share *pro rata* with the other claims against the Debtor's estate.  *But see id.* at *19 n. 94 ("The Court is not making any ruling at this time as to the allowance, priority or amount of any claim.").