IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) <br> ) <br> CATHOLIC DIOCESE OF WILMINGTON, INC., ) <br> a Delaware Corporation, ) <br> ) <br> Debtor. ) <br> ) | Chapter 11 <br><br> Case No. 09-13560 (CSS) |
| OFFICIAL COMMITTEE OF UNSECURED ) <br> CREDITORS, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> CATHOLIC DIOCESE OF WILMINGTON, INC., ) <br> et al., ) <br> ) <br> Defendants. ) | Adv. Proc. No. 09-52866 <br><br><br><br><br> Hearing date: To be determined[1] <br> Response date: August 11, 2010 |

**THE NON-DEBTOR DEFENDANTS' PETITION, PURSUANT TO 11 U.S.C. § 105(a), 28 U.S.C. § 158(d)(2) AND FED. R. BANKR. P. 8001(f), FOR CERTIFICATION OF DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT OF THEIR APPEAL FROM THE PHASE I ORDER AND JUDGMENT**

The defendant parish corporations and non-debtor Catholic entities that participate in the pooled investment account maintained by the Debtor at the Bank of New York Mellon (f/k/a Mellon Bank, N.A.) (together, the "Non-Debtor Defendants"), by and through their undersigned counsel, hereby respectfully request (the "Certification Request"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* (the "Bankruptcy Code"), 28 U.S.C. § 158(d)(2) and Rule 8001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), entry of an order certifying their appeal of this Court's *Corrected Order*

---

[1] Pursuant to the *Motion to Schedule Emergency Hearing on the Non-Debtor Defendants' Petition, Pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8001(f), for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit of Their Appeal from the Phase I Order and Judgment*, filed contemporaneously herewith, the Non-Debtor Defendants seek an emergency hearing on this Certification Request.

*Partially Granting and Partially Denying Declaratory Relief with Respect to the Second and Fourth Claims for Relief of the Complaint and Directing Entry of Final Judgment* [Adv. Docket No. 129][2] and *Corrected Final Judgment* [Adv. Docket No. 128][3] (collectively, the "Phase I Order and Judgment") for direct appeal to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), and in support thereof, respectfully state as follows:

## BACKGROUND

1. The Official Committee of Unsecured Creditors (the "Committee") commenced this adversary proceeding against the Debtor and Non-Debtor Defendants on December 18, 2009 by filing a Complaint for Declaratory Relief and Substantive Consolidation, seeking a determination from the Court regarding ownership of approximately $76 million in the Pooled Investment Account maintained by the Debtor at Bank of New York Mellon (the "PIA"). (Adv. Docket No. 1).

2. On January 12, 2010, the Court held a hearing, at which it decided to bifurcate the adversary proceeding into two phases and entered a Joint Stipulation and Proposed Scheduling Order on January 28, 2010. (Adv. Docket No. 25). The Order scheduled a trial on the second and fourth claims for relief set forth in the Complaint to commence on June 2, 2010. These claims sought to determine whether the Non-Debtor Defendants' investments in the PIA were held by the Debtor in trust for the benefit of the investors, whether the funds were commingled, and if so, whether the defendants could identify and trace those trust funds. (Adv. Docket No.

---

[2] A copy of the Corrected Phase I Order is attached hereto as Exhibit A. For the avoidance of doubt, the Non-Debtor Defendants will also appeal the *Order Partially Granting and Partially Denying Declaratory Relief with Respect to the Second and Fourth Claims for Relief of the Complaint and Directing Entry of Final Judgment* [Adv. Docket No. 125], which is attached hereto as Exhibit B.

[3] A copy of the Corrected Final Judgment is attached hereto as Exhibit C. For the avoidance of doubt, the Non-Debtor Defendants will also appeal the *Final Judgment* [Adv. Docket No. 127], which is attached hereto as Exhibit D.

115 (Opinion at 3)).[4]

3.  On May 3, 2010, the Court entered an Order, pursuant to Local Rule 9019-3, assigning the issues relating to the Debtor's bankruptcy to the Court-appointed mediator. (Docket No. 463). In connection with this Order, the Court issued a letter to the constituencies, indicating that it was seeking the mediator's assistance in mediating "whether the parties will actually mediate and to report back to the Court as to whether such an agreement has been reached." (Docket No. 462).

4.  As requested, the mediator issued a report to the Court, recommending that issues involving the constituencies in the bankruptcy be held in abeyance pending the mediation. (Docket No. 477). Included among those issues was the trial in this adversary proceeding.

5.  The Non-Debtor Defendants respectfully disagreed with the recommendation of the mediator, and submitted a letter to the Court on May 14, 2010 explaining their dissent. (Adv. Docket No. 81). In particular, the Non-Debtor Defendants noted that a significant portion of the PIA funds at issue are used to support the operation of several Diocesan schools. With the approach of the next academic year, those schools needed to know whether they would have access to those funds, which they relied on to operate. The Non-Debtor Defendants' letter provided other examples of the many practical barriers that the parishes and community service organizations comprising the "pooled investors" faced in any delay in a definitive determination of their right to the funds held in the PIA. (*Id.*).

6.  On May 17, 2010, the Court held a hearing to address whether the trial in this proceeding should go forward, notwithstanding the mediator's recommendation to the contrary. At the hearing, the Court made several observations, including the following: "The only thing really going forward will be this litigation, the Phase I, because I think it will, in all likelihood,

---

[4] A copy of the June 28, 2010 Opinion is attached hereto as Exhibit E.

make settlement much more likely, as opposed to less likely, to be achieved, if we know what the outcome of that Phase I trial is." (May 17, 2010 Transcript at 24:8-12).[5] For these reasons, the Court ordered the trial to proceed, as scheduled, on June 2, 2010.

7. During the trial, representatives of each Non-Debtor Defendant testified regarding the significance of their investment in the PIA, in addition to the public importance of their continued service to the community. (*See, e.g.*, June 3, 2010 Transcript at 108:6-18, 177:12-17, 217:3-8).[6]

8. At the conclusion of the trial, the Debtor, the Non-Debtor Defendants and the Committee participated with other constituencies in a mediation session.

9. On June 28, 2010, the Court issued its Opinion with respect to the second and fourth claims for relief of the Complaint. (Adv. Docket No. 115). The Court ruled that the Non-Debtor Defendants' PIA funds are held in a resulting trust on their behalf. (Opinion at 3). It further concluded, however, that these funds were commingled in both the Debtor's operating account and the PIA. It then held that, to identify and trace the funds, the defendants were required to conduct the lowest intermediate balance test (the "LIBT"), and could not rely on the nexus test established by the United States Supreme Court in *Begier v. IRS*, 496 U.S. 53 (1990), and adopted by the Third Circuit in *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92 (3d Cir. 1994).

10. On July 19, 2010, the Court entered an Order partially granting and partially denying declaratory relief with respect to the second and fourth claims for relief of the Complaint. (Adv. Docket Nos. 125, 129). In the Order, the Court determined, among other things, that there was no just reason for further delay and directed entry of a final judgment on

---

[5] Excerpts from the May 17, 2010 transcript are attached hereto as <u>Exhibit F</u>.
[6] Excerpts from the June 3, 2010 transcript are attached hereto as <u>Exhibit G</u>.

the second and fourth claims for relief of the Complaint pursuant to Fed. R. Civ. P. 54(b), made applicable to the adversary proceeding by Fed. R. Bankr. P. 7054(a).

11. Prior to entry of the Court's Order, the Non-Debtor Defendants filed a motion for reconsideration of its Opinion, in which they requested that the Court reconsider its determination that certain non-Debtor funds, which the defendants assert were directly transferred into the PIA, were property of the bankruptcy estate. (Adv. Docket No. 116). The Court denied the Non-Debtor Defendants' motion for reconsideration on July 21, 2010. (Adv. Docket Nos. 134, 135).

12. The Non-Debtor Defendants will file a timely notice of appeal of the Phase I Order and Judgment on or before August 2, 2010.

## JURISDICTION AND VENUE

13. This Court has jurisdiction to consider the Certification Request pursuant to 28 U.S.C. §§ 158(d)(2)(A) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

14. The Non-Debtor Defendants respectfully request the entry of an order, pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8001(f), certifying their appeal from the Phase I Order and Judgment for direct appeal to the Third Circuit.[7]

15. Pursuant to the motion to schedule an emergency hearing, filed contemporaneously herewith, the Non-Debtor Defendants seek expedited consideration of the Certification Request for the reasons set forth therein. Specifically, the Non-Debtor Defendants

---

[7] A certification motion under 28 U.S.C. § 158(d)(2) must be filed in the court where the matter is pending. Fed. R. Bankr. P. 8001(f). Until an appeal is docketed in the district court, the matter remains pending in the bankruptcy court. *Id.* A certification motion must be made not later than 60 days after entry of the order from which the appeal is taken. 28 U.S.C. § 158(d)(2)(E).

respectfully request that the Court schedule an emergency hearing on the Certification Request during the week of August 9, 2010, or as soon as practicable thereafter, but no earlier than August 12, 2010 (the day after the deadline for the Committee to respond to the Certification Request), such that responses, if any, to the Certification Request are timely filed as contemplated by Bankruptcy Rule 8001(f)(3)(D).

## BASIS FOR RELIEF REQUESTED

### A. Certification Is Mandatory If Any Single Circumstance Of Those Enumerated In 28 U.S.C. § 158(d)(2)(A) Exists

16. In 2005, the United States Congress streamlined bankruptcy appeals to enable expedited access to the United States Circuit Courts of Appeal by enacting 28 U.S.C. § 158(d)(2)(A). Section 158(d)(2)(A) provides that if both parties consent or the bankruptcy or district court so certify, an appeal from a judgment or order may be taken directly to the governing United States Circuit Court of Appeals when any one of the following three circumstances are met:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A).

17. Congress enacted this procedure to address problems related to the "time and cost factors attendant to the [prior] appellate system." H.R. Rep. No. 109-31, at 148 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 206. Particularly, Congress was concerned with the fact that "decisions rendered by a district court as well as a bankruptcy appellate panel are generally not

binding and lack stare decisis value." *Id.*

18. To that end, certification is mandatory if any one of the three circumstances enumerated in section 158(d)(2)(A) exists. *See* 28 U.S.C. § 158(d)(2)(B) (providing that if a bankruptcy court "on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists . . . then the *bankruptcy court . . . shall* make the certification described" (emphasis added)); *Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc.*, 360 B.R. 429, 433 (Bankr. D. Del. 2007) (noting court "must issue a certification if it determines the order at issue involves any of the following: (1) a question of law upon which there is no controlling decision of the Third Circuit or of the Supreme Court of the United States; (2) a matter of public importance; or (3) a question of law requiring resolution of conflicting decisions" or it determines that a direct appeal will materially advance the progress of the case).

19. For the reasons set forth below, all three of the criteria specified in § 158(d)(2)(A) exist and justify a direct appeal to the Third Circuit.

**B. This Court's Ruling Involves A Matter Of "Public Importance" Concerning A Critical Aspect Of Bankruptcy Code Protection**

20. The statute does not define the phrase "public importance." However, courts have held that a matter is of public importance if the issue on appeal "transcend[s] the litigants and involve[s] a legal question, the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *In re Nortel Networks Corp.*, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010).

21. The bankruptcy of the Catholic Diocese of Wilmington, Inc. is a "case of immense human concern and importance to our Community." (Docket No. 477 (Judge Gross's letter)). Under the leadership of Most Reverend W. Francis Malooly, the Diocese serves

approximately 233,000 Catholic faithful and 57 parishes within a territory comprising the City of Wilmington and the Counties of New Castle, Kent and Sussex in Delaware, and the 9 eastern-shore counties of Caroline, Cecil, Dorchester, Kent, Queen Anne, Somerset, Talbot, Wicomico and Worcester in Maryland. Within the Diocese, there are 2 diocesan and 3 parish high schools, and 4 parochial and 18 parish elementary schools, with a total enrollment of approximately 12,000 students.

22. Additionally, there are a number of Catholic not-for-profit corporations that assist the Diocese and the parishes in their pastoral ministry, including the Catholic Diocese Foundation, Catholic Charities, Diocese of Wilmington Schools, Catholic Cemeteries, Catholic Ministry of the Elderly, Catholic Press of Wilmington, Catholic Youth Organization, Seton Villa, Siena Hall and Children's Home. These organizations provide charitable, religious, social and educational services to the poor, neglected and abused members of the community.

23. Over 30 of these parishes and religious organizations invest in the PIA.

24. Putting aside the human importance of this bankruptcy, however, this case presents keen issues of legal significance that transcend the interests of the parties in the underlying dispute. That is, this case requires the consideration of the rights of tort creditors (represented by the Committee) to a pool of money that, had it been placed in "separate accounts," would never have been available to those creditors. Indeed, in the majority of trust cases that result in the dispossession of funds from a trust beneficiary, those funds have been commingled "in one indistinguishable mass." (Opinion at 32). Here, on the other hand, each of the Debtor and Non-Debtor Defendants can describe precisely how much money is held in trust for their benefit, but because they could not, according to the Court, trace the funds under the LIBT, they became property of the estate. The legal significance of placing this case within the

construct of the LIBT, as opposed to, for instance, the nexus test, is eminent. A resolution by the Third Circuit will serve to inform unknowing trustees, who maintain multiple trust accounts, of their fiduciary obligations, and future trust beneficiaries of their rights and expectations.

C. **The Ruling Resolved Issues of First Impression For Which There Is No Controlling Third Circuit Or Supreme Court Decision**

25. The "controlling precedent" prong codified in § 158(d)(2)(A)(i) requires that there be "no governing law on the issue before the court." *In re Nortel Networks Corp.*, 2010 WL 1172642, at *1. Moreover, a controlling question of law "at the very least encompasses a ruling which, if erroneous, would be reversible error on final appeal." *In re Marvel Entm't Group, Inc.*, 209 B.R. 832, 837 (D. Del. 1997).

26. The majority of cases in the Third Circuit addressing the rights of trust beneficiaries primarily involve an adverse Debtor and a single, commingled account, whose deposits and withdrawals are analyzed by the Court over a relatively short period of time. Here, on the other hand, the Court was asked to determine the rights of the Non-Debtor Defendants in a historical pooled account for which meticulous sub-accounting records were maintained by a Debtor, who fully supported their interest as trust beneficiaries.

27. In its Opinion, the Court made several key determinations based on the unique considerations of this case. Among other things, the Court found and held that (1) the investors' funds, which were meticulously tracked by accounting sub-funds, were nonetheless commingled with the funds of the Debtor and (2) the nexus test was not applicable to this case, which instead was governed by, and compelled application of, the LIBT. As set forth below, these findings present legal issues of first impression for the Third Circuit, and which have not been addressed by the Supreme Court.

### 1. Commingling of Funds in the PIA

28. No case in the Third Circuit or the Supreme Court has addressed whether "sub-accounting" entries in a Debtor's books and records is sufficient to maintain the separateness of trust property. In arguing in the affirmative, the Non-Debtor Defendants directed the Court to the decision of the United States District Court for the Middle District of Florida, which held that where an accurate accounting is made of funds held in a cash management system on behalf of multiple entities, those funds are not considered commingled for purposes of an alter ego analysis. *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 252-53 (M.D. Fla. 1994).

29. The Committee did not direct the Court to a single case reaching a contrary conclusion in the trust setting or any other setting.

30. On this issue, the Court held that while the Debtor's "accounting system may serve to divvy out the pieces of the pie . . . the pieces are all in one dish." (Opinion at 22). In making this determination, however, the Court did not rely on any legal authority.

31. The Non-Debtor Defendants respectfully request that the Court, recognizing that cash is fungible (*id.* at 23), certify an appeal to the Third Circuit for consideration of whether a pooled account, for which meticulous sub-accounting records are kept, results in a "commingling" of funds, requiring the identification and tracing of the trust property.

### 2. The Nexus Test

32. The Non-Debtor Defendants make a similar request with respect to the Court's holding on the application of the LIBT. To identify and trace their trust funds, the Non-Debtor Defendants relied on, among other things, the Supreme Court's decision in *Begier v. I.R.S.*, 496 U.S. 53 (1990), the Third Circuit's decision in *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92 (3d Cir. 1994), and this Court's decision in *In re Edison Bros., Inc.*, 243 B.R. 231 (Bankr. D.

Del. 2000), to support their argument that application of the LIBT was neither necessary nor appropriate in this case. While the funds at issue in *Begier* and *City of Farrell* were for the benefit of taxing authorities, the trust beneficiaries in *Edison Bros.* were comprised of general unsecured creditors. In determining the rights of these creditors to the trust property, the Court adopted the "nexus test," as established in *Begier* and followed by *City of Farrell*, noting that although those "cases dealt with taxes, they apply equally to all constructive trust cases under section 541(d)." *Edison Bros.*, 243 B.R. at 240.

33. In addressing the Non-Debtor Defendants' argument on this issue, the Court "narrowly construed" the Supreme Court's holding in *Begier*, "respectfully limit[ed] the application of the Third Circuit's holding in *City of Farrell* to the facts of that case" and "reject[ed] the holding in *Edison Bros.*" (Opinion at 23). It thereupon determined that this case warranted the application of the LIBT. Such a determination presents a unique question of law that controlling authorities have yet to address. Indeed, in mandating the application of the LIBT to this case, the Court found that *Begier* and *City of Farrell* were *not* controlling and that *Edison Bros.*, which was the only case in this Court to apply the nexus test outside the taxing context, must be rejected.

34. The Non-Debtor Defendants respectfully request that the Court certify this direct appeal to the Third Circuit, which, as the Court recognized, "has not formally adopted the LIBT" (*id.* at 24), to address whether this test is the only method available to a non-tax trust beneficiary in tracing its funds.

### D. This Appeal Involves A Question Of Law Requiring Resolution Of Conflicting Decisions

35. Conflicting decisions within the Third Circuit form a basis to certify a direct appeal under § 158(d)(2)(A)(ii). *See In re Goody's Family Clothing, Inc.*, 2009 WL 2355705, at

*2 (D. Del. July 30, 2009).

36. The Court's rejection of its prior holding in *Edison Bros.*, which specifically recognized the limitations of the LIBT and invited the application of the nexus test in the non-tax context, creates a conflict within this Court, which is opportune for resolution by the Third Circuit. In determining that the LIBT was "the appropriate standard to apply in this case" (Opinion at 23), the Court found *Edison Bros.'* extension of the nexus test to constructive trust cases under 541(d) to be an "overly expansive reading of the holding in [*Begier* and *City of Farrell*]." (*Id.* at 35). Given the conflicting views of this Court on the breadth of the nexus test and the rigid application of the LIBT, the Non-Debtor Defendants respectfully request that the question be certified for appeal to the Third Circuit.

37. In the same way, if the Court finds that *Begier* and *City of Farrell* represent controlling authority with respect to the question of law set forth in ¶¶ 32-34, the Non-Debtor Defendants respectfully submit that the Court's Opinion conflicts with that authority and, as such, the question should be certified under 28 U.S.C. § 158(d)(2)(A)(ii).

### E. Direct Appeal To The Third Circuit Will Materially Advance Both The Adversary Proceeding And The Chapter 11 Case

38. A direct appeal to the Third Circuit will materially advance the progress of the adversary proceeding from which this appeal is taken and the underlying bankruptcy case to which this appeal relates. Foremost, appeal of the Phase I Order and Judgment will provide finality to the issue of ownership of the funds in the PIA, which is the "gravamen of the adversary proceeding." *See In re Broadstripe, LLC*, 2009 WL 774401, at *2 (Bankr. D. Del. Mar. 29, 2009). Indeed, at its January 12, 2010 bifurcation hearing, the Court offered a "global comment" that the "approximately $70 million dollars . . . at issue [in the adversary proceeding] is a *gateway issue for the development of the case.*" (January 12, 2010 Transcript at 82:25-83:7

(emphasis added)).[8]

39. Direct appeal to the Third Circuit will also materially advance the Debtor's underlying Chapter 11 case. Indeed, the inclusion of the PIA funds in the bankruptcy estate results in an increase in the Debtor's assets *threefold*. Therefore, a resolution as to whether these funds are part of the estate is critical to any meaningful negotiations in mediation or to reaching a consensual plan of reorganization.

40. Moreover, as the Court recognized, the Non-Debtor Defendants "use much of their money in the PIA to fund their extensive and important charitable activities." (Opinion at 43 n.95). Absent a final resolution over the ownership of these funds, the Non-Debtor Defendants are left in a state of uncertainty as to whether schools can open in September and programs can continue to operate. St. Paul's School, for instance, cannot continue its operations if it does not receive its regular grants from the Catholic Diocese Foundation. Likewise, the Catholic Charities' adoption program, among others, would be forced to discontinue operations if it did not have access to its pooled investment income. (June 3, 2010 Transcript at 224:20-225:6). Suffice to say, the Non-Debtor Defendants have a significant stake in the outcome of this proceeding and, as such, are opposed to accepting their status as creditors without first exhausting their appellate remedies.

41. In the same way, a final determination as to whether the Non-Debtor Defendants are, in fact, creditors of the estate will materially advance the case. Absent an appellate resolution, the bankruptcy will proceed without an understanding of whether the cast of creditors is increased by over 30 PIA claimants, or whether its size will remain the same but the pot available to those creditors will be reduced by approximately $75 million.

42. In any event, given the monetary amount at stake and the unique nature of the

---

[8] Excerpts from the January 12, 2010 transcript are attached hereto as Exhibit H.

claims in dispute, a Third Circuit appeal is inevitable. Even if the appeal were to proceed in the United States District Court for the District of Delaware, the grave importance of these issues suggests that the non-prevailing party would further appeal any adverse ruling to the Third Circuit. To that end, a direct appeal removes what would otherwise be an intermediate step on the path to the Third Circuit. Importantly, a direct appeal to the Third Circuit will also reduce the possibility that the appeal would later be dismissed by an appellate court as equitably moot. *See In re Cont'l Airlines*, 91 F.3d 553 (3d Cir. 1996).

## NOTICE

43. Notice of this Motion has been provided to the (i) Office of the United States Trustee; (ii) counsel to the Debtor; (iii) counsel to the Official Committee of Unsecured Creditors; and (iv) any party that has requested service pursuant to Local Rule 2002. The Non-Debtor Defendants submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Non-Debtor Defendants respectfully request that the Court (i) enter an order granting the Certification Request substantially in the form of order attached hereto as Exhibit I and (ii) grant such other and further relief that the Court deems necessary and appropriate.

ASHBY & GEDDES

    /s/ *Philip Trainer, Jr. (#2788)*
Stephen E. Jenkins (#2152)
Philip Trainer, Jr. (#2788)
Toni-Ann Platia (#5051)
Stacy L. Newman (#5044)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888

*Attorneys for the Defendant Pooled Investment Participants*

Dated: July 28, 2010