# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CATHOLIC DIOCESE OF WILMINGTON, INC., | ) | Case No. 09-13560 (CSS) |
| a Delaware Corporation, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ——————————————————— | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | Adv. Proc. No. 09-52866 |
| CREDITORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CATHOLIC DIOCESE OF WILMINGTON, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

## SUPPLEMENTAL OPENING BRIEF IN SUPPORT OF
## DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John T. Dorsey (#2988)
Neilli Mullen Walsh (#2707)
John J. Paschetto (#3766)
Mary F. Dugan (#4704)
Patrick A. Jackson (#4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600

*Attorneys for the Debtor*

ASHBY & GEDDES

Stephen E. Jenkins (#2152)
Richard D. Heins (#3000)
Philip Trainer, Jr. (#2788)
Ricardo Palacio (#3765)
Toni-Ann Platia (#5051)
Stacy L. Newman (#5044)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
*Attorneys for the Non-Debtor
Defendants*

Dated: December 20, 2010

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ....................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

ARGUMENT ............................................................................................................ 2

    I.     THE EQUITABLE REMEDY OF PIERCING OF THE
           CORPORATE VEIL IS NOT AVAILABLE AS BETWEEN
           CORPORATIONS THAT ARE NOT FORMALLY RELATED
           AS PARENTS AND SUBSIDIARIES ...................................................... 2

           A.     No Delaware Court has Pierced the Veil Separating an
                     "Informal" Parent and Subsidiary .................................................... 5

           B.     The Courts of Other Jurisdictions Have Made Ownership
                     An Essential Element of Any Veil Piercing Claim ......................... 9

           C.     Creditors are Not Left Without a Remedy in the Right
                     Situation ........................................................................................ 12

    II.     EVEN IF THE EQUITABLE REMEDY OF PIERCING OF THE
           CORPORATE VEIL BETWEEN CORPORATIONS THAT ARE
           NOT FORMALLY RELATED AS PARENT AND SUBSIDIARY
           WERE AVAILABLE UNDER DELAWARE LAW, IT WOULD
           NOT BE AVAILABLE UNDER THE FACTS AND
           CIRCUMSTANCES OF THIS CASE ...................................................... 14

           A.     The Remedy Sought by the Committee is not Available
                     Under Delaware Law Under Any Facts or Circumstances. .......... 14

           B.     The Requirements of the "Control or Instrumentality
                     Doctrine" ....................................................................................... 15

    III.    THE DELAWARE SUPREME COURT WOULD NOT LIKELY
           ACCEPT CERTIFICATION FROM THIS COURT UNDER
           DELAWARE SUPREME COURT RULE 41 ......................................... 17

CONCLUSION ...................................................................................................... 19

{00468958;v2}

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Acree v. McMahan,*
    276 Ga. 880 (2003) ................................................................................................. 16

*Brooks-McCollum v. Shareef,*
    871 A.2d 1127 (Del. 2004) ...................................................................................... 19

*Cascade Energy and Metals Corporation v. Banks,*
    896 F.2d 1557 (10th Cir. 1990) .............................................................................. 14

*Castillo v. First City Bancorporation of Texas, Inc.,*
    43 F.3d 953 (5th Cir. 1994) ...................................................................................... 9

*Denckla v. Independence Foundation,*
    193 A.2d 538 (Del. 1963) ........................................................................................ 12

*Draper v. Paul N. Gardner Defined Plan Trust,*
    625 A.2d 859 (Del. 1993) ........................................................................................ 19

*Estate of Daily v. Title Guar. Escrow Serv., Inc.,*
    178 B.R. 837 (D. Haw. 1995) ........................................................................ 5, 9, 15

*Evanston Insurance Co. v. Luko,*
    783 P.2d 293 (Haw. Ct. App. 1989) .......................................................................... 9

*Floyd v. I.R.S.,*
    151 F.3d 1295 (10th Cir. 1998) ............................................................... 14, 15, 16

*Great West Casualty Co. v. Travelers Indemnity Co.,*
    925 F. Supp. 1455 (D.S.D. 1996) ............................................................................ 10

*In re KDI Holdings, Inc.,*
    277 B.R. 493 (Bankr. S.D.N.Y. 1999) ..................................................................... 10

*In re iPCS, Inc.,*
    297 B.R. 283 (Bankr. N.D. Ga. 2003) ..................................................................... 10

*In re Richmond,*
    430 B.R. 846 (Bankr. E.D. Ark. 2010) ...................................................................... 9

*In re Roxford Foods Litig.,*
    79 F.3d 1154 (9th Cir. 1996) ................................................................................... 10

{00468958;v2}

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*In re Schuster,*
132 B.R. 604 (Bankr. D. Minn. 1991) .............................................................9

*In re Scott Acquisition Corp.,*
344 B.R. 283 (Bankr. D. Del. 2006) ........................................................11, 12

*Irwin & Leighton, Inc. v. W.M. Anderson Co.,*
532 A.2d 983 (Del. Ch. 1987)................................................................ *passim*

*Keaton v. Kingsburg Chamber of Commerce,*
2002 WL 140523 (Cal. Ct. App. Jan. 29, 2002) ..........................................13

*Kingston Dry Dock Co. v. Lake Champlain Transp. Co.,*
31 F.2d 265 (2d Cir. 1929)...........................................................................16

*Krivo Industrial Supply CO. v. Nat'l Distillers and Chemical Corp.,*
483 F.2d 1098 (5th Cir. 1973) ..................................................................7, 10

*Krystkowiak v. W.O. Brisben Companies, Inc.*
90 P.3d 859 (Colo. 2004)..............................................................................13

*Macaluso v. Jenkins,*
95 Ill. App. 3d 461 (1981) ............................................................................13

*Oberly v. Kirby,*
592 A.2d 445 (Del. 1991) .......................................................................11, 12

*Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc.,*
432 B.R. 135 (Bankr. D. Del. 2010), .............................................................13

*Philadelphia Storage Battery Co. v. Radio Corp. of Am.,*
194 A. 414 (Del. Ch. 1937)....................................................................5, 6, 8

*Sears Roebuck & Co. v. Jardel Co.,*
421 F.2d 1048 (Ed Cir. 1970) .........................................................................3

*Teleglobe USA, Inc. v. BCE Inc.,*
392 B.R. 561 (Bankr. D. Del. 2008) ..............................................................19

{00468958;v2}

# TABLE OF AUTHORITIES

**CASES**                 **PAGE**

*Trenwick Am. Litig. Trust v. Ernst & Young, LLP,*
906 A.2d 168 (Del. Ch. 2006)....................................................................11

*Trenwick Am. Litig. Trust v. Billett,*
931 A.2d 438 (Del. 2007) ..........................................................................11

*Wilmington Country Club v. Cowee,*
747 A.2d 1087 (Del. 2000) ........................................................................16

**STATUTES**

8 *Del. C.* § 102(b)(6)......................................................................................3

8 *Del. C.* § 114...........................................................................................3, 13

12 *Del. C.* § 3401.........................................................................................12

12 *Del. C.* § 3541.........................................................................................12

12 *Del. C.* § 3552.........................................................................................12

64 *Del. Laws,* c. 180, § 1 (1983)..................................................................19

69 *Del. Laws,* c. 2, § 1 (1993)......................................................................19

76 *Del. Laws,* c. 37, § 1 (2007)....................................................................19

Del. Const. art. IV, § 9................................................................................19

Del. Const. art. IV, § 11(8) ....................................................................17, 18

Delaware Supreme Court Rule 41(a) ......................................................18, 19

11 U.S.C. § 101(2) .......................................................................................4

17 C.F.R. § 240.12b-2..................................................................................4

{00468958;v2}

# TABLE OF AUTHORITIES

PAGE

## OTHER AUTHORITIES

R. Franklin Balotti and Jesse A. Finkelstein, *Delaware Law of Corporations and Business Organizations* (3rd Ed. 2007) ...........................................................................2, 3

Henry Hansmann et al., *Law and the Rise of the Firm*, 199 HARVARD L. REV. 1335 (2005-2006) .......................................................................................................................3

Randy J. Holland, *The Delaware State Constitution A Reference Guide* (2002) ......18, 19

{00468958;v2}

## NATURE AND STAGE OF THE PROCEEDING

On September 21, 2010 and October 8, 2010, the Non-Debtor Defendants and the Debtor (together, the "Defendants") moved for judgment on the pleadings respecting the First, Third and Fifth Claims for Relief set forth in the Complaint for Declaratory Relief and Substantive Consolidation filed by the Committee.[1]

The First and Third Claims for Relief relate to the Committee's assertion that the Debtor and the Non-Debtor Defendants constitute a single entity such that the assets of the Non-Debtor Defendants should be used to satisfy the debts of the Debtor. In support of their motions, the Defendants argued that the Committee's allegations were deficient given the extraordinary and unprecedented relief sought in Counts I and III of the Complaint. More specifically, the Defendants noted the unique nature of the Committee's cause of action, compared to the corporate veil-piercing found in the Delaware cases.

First, the Defendants explained that even if one accepted the Committee's unsupported assumption that the Non-Debtor Defendants were somehow subsidiaries of the Debtor, the Committee's attempt to hold the Non-Debtor Defendants liable for the debts of the Debtor would be an attempt to engage in "reverse veil-piercing," that is, holding a subsidiary liable for the debts of its parent, a concept without support in existing Delaware law. The Defendants further observed, however, that although the Committee characterizes the relationship between the Debtor and the Non-Debtor Defendants as one of "parent" and "subsidiary," the reality is that they are all separate entities with no ownership interests (legal or pecuniary). Rather, they share

---

[1] Capitalized terms not otherwise defined herein are given the same meaning ascribed to them in the briefs in support of the Debtor's and Non-Debtor Defendants' motions for judgment on the pleadings.

{00468958;v2}

certain personnel at the board, member, and management levels.[2] Thus, since no Delaware court has ever allowed a plaintiff access to a subsidiary corporation's assets in satisfaction of a parent corporation's liability (*i.e.* reverse veil-piercing), to do so where there is no ownership relationship at all would be unprecedented and contrary to the logic behind the law.

The Court held argument on the Defendants' motions on November 10, 2010 and thereafter issued a letter to the parties requesting supplemental briefing relating to the equitable remedy of piercing (or reverse piercing) of the corporate veil (the "Court's Letter"). The Court's Letter asked the parties to assume, *arguendo*, certain findings of fact and conclusions of law in preparing their briefs, including that (i) reverse piercing of the corporate veil is an equitable remedy available under Delaware law; (ii) the Debtor is the *de facto* but not *de jure* parent of each of the Non-Debtor Defendants and has dominion and control over those *de facto* subsidiaries; and (iii) the Committee has alleged sufficient facts under the First and Third Claims for Relief of its Complaint to survive the Defendants' motions for judgment on the pleadings. The Court's Letter then presented three questions, to which the Court sought a response from the parties, while utilizing the foregoing assumptions. This is the Defendants' Supplemental Opening Brief addressing the questions presented in the Court's Letter.

## ARGUMENT

### I. THE EQUITABLE REMEDY OF PIERCING OF THE CORPORATE VEIL IS NOT AVAILABLE AS BETWEEN CORPORATIONS THAT ARE NOT FORMALLY RELATED AS PARENTS AND SUBSIDIARIES

Corporations exist to limit liability. *See* R. Franklin Balotti and Jesse A. Finkelstein, *Delaware Law of Corporations and Business Organizations*, at F-7 (3rd Ed. 2007). As stated by

---

[2] As noted below, the Court has instructed the parties to assume, *arguendo*, that the Debtor controls the Non-Debtor Defendants.

{00468958;v2}

one prominent commentator, limited liability "is still the key part of our present conception of a corporation." *Id.* at F-8. And under the law of Delaware – as with most states – limited liability applies to non-profit non-stock corporations as well as to for-profit stock corporations. *See* 8 *Del. C.* § 102(b)(6) (stockholders not personally liable for corporation's debts), § 114 (provisions applying to stockholders also apply to members of non-stock corporations, subject to limited exceptions not implicated here). Under Delaware law, incorporating a non-stock entity both protects the members from liability for the corporation's debts, and – equally important – means that donors can be assured that their donations may not be seized to satisfy the debts of a member of the non-profit group, just as corporate assets may not be seized to satisfy the debts of a stockholder of a normal stock corporation. *See, e.g.,* Henry Hansmann, *et al., Law and the Rise of the Firm*, 119 HARVARD L. REV. 1335, 1343-50 (2005-2006) (explaining utility of corporate form in shielding entity's assets from owners' creditors). This "veil" between the entity and its owners or members maintains the separateness of the assets of the entity from those of the owners, and it may be "pierced" pursuant to only a few, very limited, exceptions. *E.g., Sears, Roebuck & Co. v. Jardel Co.,* 421 F.2d 1048, 1053 (3d Cir. 1970) (in Delaware, "the corporate entity is disregarded only in the rarest of cases"). One such exception is the "alter ego" doctrine. This doctrine has historically existed to allow the creditors of a subsidiary corporation to reach the assets of a parent corporation to remedy fraud or similar inequity. Veil piercing as it has been developed by Delaware courts can be contrasted to what the Committee seeks as follows:

"Normal" Veil Piercing is the erasing of a corporation's boundary by a court of equity to allow the creditors of the corporation to gain access to the assets of its stockholders.

Reverse Veil Piercing would permit the creditors of a stockholder to pierce the veil of a corporation in which that stockholder owns shares and treat its assets as if they belonged to the

stockholder.  The first thing to be noted is that this proposed equitable remedy will seldom be needed because there is usually a perfectly good legal remedy in its place.  The creditors of a stockholder may reach the stockholder's shares just as they may reach other assets of the stockholder.  By executing against a sole stockholder's shares, the creditors attain the value of the underlying corporation.

Affiliate-Piercing is what the Committee seeks to do here.  The SEC defines an "affiliate" as a corporation under common control.[3]  Given the Court's instruction to assume common control, that is the situation here.  The Non-Debtor Defendants and the Debtor are all assumed to be under the common control of the Bishop and, accordingly, the thrust of the Court's first question is whether Delaware law permits piercing the veil of affiliates because of that common control.

As shown below, affiliate veil piercing is not permitted under Delaware law.  Among other things, an ownership relationship is the foundation of any claim seeking to pierce the corporate veil.  Absent such a relationship, there is, in effect, no veil to be pierced.  Several jurisdictions around the country have affirmed this observation and made *ownership* a threshold element of a veil-piercing claim.  (*See infra* p. 9).  Moreover, affiliate veil piercing would directly contradict Delaware law on the ownership of charitable property and the responsibilities of parties controlling charitable corporations.

---

[3] Entities under common control are frequently termed "affiliates."  *See, e.g.,* 17 C.F.R. § 240.12b-2 ("'affiliate' . . . is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified"); 11 U.S.C. § 101(2) (defining "affiliates" in terms of voting securities and/or operating agreements).  The Defendants will refer to themselves as "affiliates" in this brief, given the assumption that they are under common control, but they do not concede that such control exists, or that they are "affiliates" within the meaning of any statute or otherwise under applicable law.

{00468958;v2}

Importantly, that *does not mean* that a plaintiff is left without a remedy against a wrongdoing non-owner. To the contrary, courts have recognized the application of several alternative theories that remain available to impose liability on a third party for malfeasance in connection with an insolvent debtor, including the laws of conversion, fraudulent conveyance and agency. *See Estate of Daily v. Title Guar. Escrow Serv., Inc.*, 178 B.R. 837, 844 (D. Haw. 1995), *aff'd sub nom. Estate of Daily v. Lilipuna Associates*, 81 F.3d 167 (9th Cir. 1996). Hence, there is no call for the Court to create new remedies in this area.

**A.  No Delaware Court has Pierced the Veil Separating an "Informal" Parent and Subsidiary.**

The Defendants have surveyed Delaware jurisprudence to determine the availability of the equitable remedy of piercing the corporate veil between corporations that are not formally related as parent and subsidiary. The Defendants' survey has yielded no case in which a Delaware court has addressed this specific issue or has imposed liability on an "informal" parent or subsidiary for the debts of the other. The Defendants have, however, located two cases that approach the general concept, although they were decided in the context of the traditional doctrine of corporate veil-piercing and do not much resemble the cause of action advanced here by the Committee.

In *Philadelphia Storage Battery Co. v. Radio Corp. of Am.*, the plaintiff alleged that it was defrauded out of royalties due under a contract with the defendant. 194 A. 414 (Del. Ch. 1937), *aff'd*, 6 A.2d 329 (Del. 1939). Prior to the suit, the defendant owned a controlling interest in another corporation, which was not named as a defendant in the action, but it had since sold its holdings in the subsidiary to key officers of the organization. *Id.* at 418. The substance of the plaintiff's claim surrounded the change in the "base" on which the defendant paid its royalty to the plaintiff after the defendant sold its interest in the subsidiary. The plaintiff, relying on the

5

{00468958;v2}

"instrumentality doctrine," maintained that the defendant was required to continue to report its former subsidiary's sales as the royalty base since they were, in effect, one organization. *Id.* at 419. Ultimately, the court rejected the plaintiff's theory of relief and held that the defendant had properly excluded the former subsidiary's sales from its computation of the plaintiff's royalty. In so doing, Chancellor Wolcott noted that the case involved neither a parent-subsidiary relationship nor a situation in which the allegedly controlled corporation's revenues inured to the benefit of the defendant. Given those facts, he held that the instrumentality doctrine did not apply.

Fifty years later in *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, Chancellor Allen addressed the specific issue of "whether a creditor who involved itself in the management of its troubled debtor is to be held answerable for a liability of that debtor to a third person arising from a breach of contract." 532 A.2d 983, 983 (Del. Ch. 1987). The plaintiff, a general contractor, brought an action against its former subcontractor ("Anderson") and Anderson's surety ("Fidelity"), seeking damages for Anderson's breach of contract. The plaintiff asserted several theories to support its claim of liability against Fidelity, including that Fidelity's "control" of Anderson made it liable for damages suffered by reason of Anderson's breach. As an initial matter, the Chancellor noted that "while there may be independent grounds to hold another liable for the obligations of a corporation—as an agent of the corporation or as a guarantor or surety—those in control of a corporation are not typically liable for distinctly corporate obligations by reason of that control." *Id.* at 987.

Whether Fidelity's alleged control over Anderson could give rise to liability on its part was an issue of first impression in the Court of Chancery. Drawing support from the decisions of other jurisdictions (and looking at *Philadelphia Storage Battery*), the Court adopted what it

referred to as the "control or instrumentality theory," the standard by which it considered whether a corporate creditor could impose liability against "another creditor of the corporation on the theory that the second creditor dominated and controlled the corporation to such an extent that it could be said to have used it as an instrumentality of its own." *Id.* This standard required proof of the following "essential" elements:

First, "the dominant corporation must have controlled the subservient corporation," which, the court held, required a "strong showing that the creditor assumed actual, participatory, *total* control of the debtor." *Id.* (emphasis added). "Merely taking an active part in the management of the debtor corporation does not constitute such control." *Id.* (internal quotations omitted).

Second, "the dominant corporation must have proximately caused plaintiff harm through misuse of this control." *Id.* at 987-88 (quoting *Krivo Industrial Supply Co. v. Nat'l Distillers and Chemical Corp.*, 483 F.2d 1098 (5th Cir. 1973)).

Third, the Chancery Court, taking guidance from other courts addressing the issue, held that "fraud or misuse" must be present before liability could be imposed. The court also noted that in all cases extending liability to a creditor in control of a corporation, "the creditor or its affiliate was active in the formation of the debtor corporation and was not simply an arms-length extender of credit[,]" and "the corporation was from the outset operated as an arm of the creditor's (or an affiliate's) business." *Id.* at 989.

{00468958;v2}

Utilizing that standard, the court found the record devoid of any basis to conclude that Fidelity sufficiently controlled Anderson, or had been guilty of any misuse or fraud, to justify holding it derivatively liable for Anderson's breach of contract. *Id.*[4]

Together, these decisions represent the closest analogy to the issue presented in the Court's Letter. Given, however, the distinct contexts in which these cases arose, they do not provide an authoritative answer to the Court's question. In neither case was the plaintiff trying to impose liability on the controlled party – rather, they sought to impose it on the alleged controlling party. Thus, in *Philadelphia Storage Battery* the defendant's lack of ownership of the former subsidiary was of particular importance to the court's decision refusing to utilize the "instrumentality" theory to compute the appropriate royalty base. 194 A. at 430-31. In the same way, the "control or instrumentality doctrine" set forth in *Irwin & Leighton* was adopted in the context of a debtor-creditor relationship as a means of potentially fixing liability on the controlling party as the asserted active wrongdoer. Here, by contrast, the Committee is seeking to impose liability *not* on the controlling party but on an affiliate that is also purportedly controlled by the same party. Such circumstances cannot state a claim under either case because the very basis of potential liability there was *control*. It was the ability to control – *and profit from* – the primary debtor entity that would potentially give rise to liability.

Moreover, even assuming that *Irwin & Leighton* could otherwise apply here, the Committee's Complaint would not meet its standard since the Committee did not plead (1) *total* dominion and control by the Debtor, (2) that the injuries were proximately caused by that control

---

[4] The court also stated that "whether [Fidelity] may be held directly liable is a different question." *Id.* at 989. In other words, while the court refused to hold Fidelity liable under the "control or instrumentality theory," other methods of imposing liability against it remained available. Indeed, the court allowed the plaintiff's claims for aiding and abetting a breach of trust and tortious interference with contractual relations against Fidelity to go forward.

{00468958;v2}

or (3) fraud or misuse of the Non-Debtor Defendants. *None* of these elements is present here. Indeed, the requirement of proximate cause would necessarily rule out application of the "control or instrumentality theory" because, by definition, an entity that did not control the primary debtor could not have caused the harm at issue.

**B. The Courts of Other Jurisdictions Have Made Ownership an Essential Element of Any Veil Piercing Claim.**

Courts that *have* more directly addressed the issue presented in the Court's Letter appear to be split on the appropriate answer. Although none appear to have considered what is here termed "affiliate veil piercing," several courts have made ownership a threshold requirement of any direct (or reverse) veil-piercing claim. *See Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 963 (5th Cir. 1994) (finding that plaintiff's alter ego claim against defendants with no ownership relationship, or no corporate veil between them, "not just meritless, but silly"); *Estate of Daily*, 178 B.R. at 844 ("Hawaii courts have indicated that stock ownership is a necessary element for a conventional alter ego action."); *In re Richmond*, 430 B.R. 846, 862 (Bankr. E.D. Ark. 2010) (refusing to apply claimant's alter ego theory because "there is no veil, corporate or partnership, to pierce to fix liability on [the defendant who] has no ownership interest in [the debtors]"); *In re Roxford Foods Litig.*, 79 F.3d 1154 (9th Cir. 1996) (upholding district court's finding that defendant lacked an ownership interest in the debtor sufficient to render defendant liable as an alter ego)*; Evanston Insurance Co. v. Luko*, 783 P.2d 293 (Haw. Ct. App. 1989) (holding corporate veil cannot be pierced because there was no evidence defendants were shareholders); *In re Schuster*, 132 B.R. 604, 608 (Bankr. D. Minn. 1991) (stating that a bankruptcy trustee could not maintain a reverse alter ego claim unless the individual debtor held a stock ownership interest in the corporation).

9

On the other side of the split, some courts have allowed a veil-piercing claim (against creditors) to proceed when an ownership relationship was not present between the defendants. *See Krivo Indus. Supply Co. v. Nat'l Distillers and Chem. Corp.*, 483 F.2d 1098 (5th Cir. 1973) (applying Alabama law and addressing the issue of whether a creditor could be held liable for the debts of its debtor); *In re KDI Holdings, Inc.*, 277 B.R. 493 (Bankr. S.D.N.Y. 1999) (finding claims of lender liability through an instrumentality theory were "colorable" under New York law where allegations of actual managerial and voting control over the debtors was present); *In re iPCS, Inc.*, 297 B.R. 283 (Bankr. N.D. Ga. 2003) (finding that claimant alleged sufficient facts to show colorable veil piercing claim under Delaware law for contractor liability for debts of debtor); *Great West Casualty Co. v. Travelers Indemnity Co.*, 925 F. Supp. 1455 (D.S.D. 1996) (holding that South Dakota law would recognize an "instrumentality" theory for holding a lender liable for the debts of a borrower).

The courts in each of these cases, however, adopted standards similar to that set forth in *Irwin & Leighton*. And they all tend to have two critical elements in common: The party on which liability is sought to be imposed was, first, alleged to be in control and, second, given a specific *right* to control the defendant. The right arose from the parties' contractual relationships, as opposed to the stockholder-corporation relationship found in veil piercing cases.

Here, the Committee seeks to impose liability *not* on the controlling party (assumed to be the Debtor), but on the controlled parties. To claim that the controlled party is responsible for the debts of the controlling party flies in the face of logic, equity and Delaware law. After all, what has the controlled corporation (and its own creditors and donors) done to deserve that liability? Even when (unlike here) one corporation is the sole stockholder of another, a controlling party has a fiduciary duty to the controlled subsidiary, and creditors of the subsidiary

{00468958;v2}

will have a derivative claim of fiduciary breach if the parent uses its control of the subsidiary to benefit itself while making the subsidiary insolvent. *See Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 204 n.96 (Del. Ch. 2006) ("If the firm is insolvent, its residual claimants are the creditors and it is for their benefit that the directors must now manage the firm. A purposeful fraudulent transfer to stockholders who are 'out of the money' is obviously inconsistent with the best interest of the creditors, the firm's new residual claimants."), *aff'd*, 931 A.2d 438 (Del. 2007) (ORDER); *In re Scott Acquisition Corp.*, 344 B.R. 283, 286 (Bankr. D. Del. 2006) ("In my view, Delaware law would recognize that the directors and officers of an insolvent wholly-owned subsidiary owe fiduciary duties to the subsidiary and its creditors."). A rule allowing a controlled corporation to be held liable for the debts of the controlling entity, rather than vice-versa, would come into direct conflict with the rules articulated in *Trenwick*, *Scott Acquisition*, and other cases that the assets of an insolvent subsidiary must be managed for the benefit of the *subsidiary's* creditors.

That principle applies not only to stock corporations; it applies to not-for-profit corporations as well. A party controlling a non-profit corporation violates its fiduciary duty if it tries to enrich itself or pay off its creditors by using the charitable corporation's assets. For example, in *Oberly v. Kirby*, 592 A.2d 445 (Del. 1991) (en banc), the Delaware Supreme Court repeatedly stressed that a charitable corporation "must be managed on behalf of its beneficiaries, not its members." *Id.* at 458. In reaching that decision, Justice Walsh noted that a person who effectively controlled a charitable corporation, like any controlling party, is required "to act with fairness and loyalty, devoid of considerations of self-interest." *Id.* at 462. Moreover, "those in control" of a corporation *have a special duty to advance its charitable goals and protect its assets. Any action that poses a palpable and identifiable threat to those goals, or that*

{00468958;v2}

*jeopardizes its assets would be contrary to the Certificate and hence ultra vires.*" *Id.* (emphasis added) (citing *Denckla v. Independence Foundation*, 193 A.2d 538, 541 (Del. 1963)).

Moreover, not only do fiduciaries to a charitable corporation have a "special duty" to protect its assets – a violation of which would be *ultra vires* – but the day-to-day operations of charitable corporations and trusts are heavily regulated by Delaware statutory law in order to prevent misuse or mismanagement by the controlling parties. *See, e.g.,* 12 *Del. C.* § 3541 (administration of charitable trusts); § 3401 *et seq.* (Uniform Prudent Management of Institutional Funds Act); § 3552 (Powers of Cemetery Corporation as to trust funds).

Thus, not only is there is no basis in Delaware law for piercing the veil between corporations that are not in a formal parent-subsidiary relationship, imposing liability on a controlled corporation for the debts of the controlling corporation would run counter to Delaware law that has developed to protect creditors and donors. The assets of controlled entities are simply not subject to pilfering to pay off the controlling entity's debts since that would breach the controlling entity's fiduciary duties, and in the case of a charitable corporation, such as here, would be *ultra vires*.

**C.      Creditors are Not Left Without a Remedy in the Right Situation.**

Does this mean that creditors of an entity have no recourse if such entity established a series of affiliate corporations to shield its assets from claims? Not at all. For example, if a controlling party formed a stock corporation to hide assets, the controller's creditors could attach its stock in the corporation and cause that stock to be sold in order to monetize the value in the subsidiary. If the controlling entity was insolvent at the time of the transfer, a fraudulent transfer cause of action could also be maintained. In each instance, no veil piercing would be needed.

12

Here – assuming, *arguendo*, that the facts supported it – creditors of the Debtor could perhaps have a veil piercing action against the sole member of the Debtor (and the allegedly controlling member of the Non-Debtor Defendants), *i.e.*, the Bishop.[5] Delaware has not expressly held that veil piercing against fiduciaries can be used in the case of charitable corporations, but since other states have done so, the Defendants assume for these purposes that Delaware would follow suit.[6] The Bishop, of course, has few assets personally (and the current Bishop was not even in Delaware at any relevant time), but if he had engaged in activities that made veil piercing a proper remedy, he could then be held liable for the Debtor's debts. Alternatively, or in conjunction with a veil-piercing cause of action against the Bishop, the creditors of the Debtor could have a separate cause of action for fraudulent transfer directly

---

[5] Members of Delaware non-stock corporations are analogous to stockholders of Delaware stock corporation. *See, e.g.*, 8 *Del. C.* § 114 (statutory provisions referring to stockholders are deemed to apply also to members of nonstock corporations). The Bishop is a member of each of the Non-Debtor Defendants. *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 140-41 (Bankr. D. Del. 2010). Not only did the Court orally point to the Bishop's control at argument, but that is what the Complaint alleges as well. Complaint ¶ 30 ("Only the *Bishop* has the power to dissolve any of the Parishes or establish new ones.") (emphasis added); ¶ 32 ("The *Bishop* also has the authority to 'suppress' any parish in the Diocese.") (emphasis added); ¶ 44 ("On information and belief, only the *Bishop* has the power to authorize the opening or closing of schools.") (emphasis added).

[6] *See Macaluso v. Jenkins*, 95 Ill. App. 3d 461 (Ill. App. Ct. 1981) (piercing veil to impose liability on the party serving as founder, treasurer and chairman of the board of nonprofit corporation); *Krystkowiak v. W.O. Brisben Companies, Inc.*, 90 P.3d 859, 866-67 (Colo. 2004) (recognizing that members of a nonprofit corporation may become personally liable for the debt of the corporation to the extent the alter ego doctrine applies or they owe money to the corporation); *but see Keaton v. Kingsburg Chamber of Commerce*, 2002 WL 140523, at *6 n.7 (Cal. Ct. App. Jan. 29, 2002) (observing that "it is difficult to conceive how officials of a nonprofit corporation can ever hold an ownership interest in the corporate assets absent some proof that such assets were diverted by the individuals for their private purposes"). The assumption that Delaware would follow suit might well be incorrect, but if the Bishop made wrongful use of the Debtor's assets, there are other remedies that would allow liability, such as a breach of fiduciary duty or fraudulent conveyance.

{00468958;v2}

against the Bishop and the Non-Debtor Defendants if it were found that the Bishop had fraudulently stashed money in those entities. The evidence adduced at trial during Phase I of this case, however, proved that the Non-Debtor Defendants have their own assets that were given to them by their own donors over generations. There was no fraudulent transfer here, as evidenced by the Committee's Complaint, which only argues that the Non-Debtor Defendants' assets *should* be deemed to belong to the Debtor for other equitable reasons.

## II. EVEN IF THE EQUITABLE REMEDY OF PIERCING OF THE CORPORATE VEIL BETWEEN CORPORATIONS THAT ARE NOT FORMALLY RELATED AS PARENT AND SUBSIDIARY WERE AVAILABLE UNDER DELAWARE LAW, IT WOULD NOT BE AVAILABLE UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE

### A. The Remedy Sought by the Committee is not Available Under Delaware Law Under Any Facts or Circumstances.

For the reasons discussed above, piercing the corporate veil is never permissible under Delaware law between corporations that have no formal parent-subsidiary relationship. No Delaware court has ever imposed piercing liability under such circumstances, and there is no reason to believe that Delaware courts exercising their equity jurisdiction would be less protective of the corporate form than the courts of other jurisdictions that have refused to acknowledge veil piercing in the absence of an ownership interest. Additionally, tracing liability from a controlling entity to the controlled entity would conflict with Delaware precedent regarding the rights of creditors. And, absent a clear state law precedent for doing so, federal courts have generally refused to expand equitable theories of corporate liability, such as the doctrine of corporate veil-piercing. *See Cascade Energy and Metals Corporation v. Banks*, 896 F.2d 1557, 1577 (holding that, "[a]bsent a clear statement" by state supreme court adopting reverse-piercing theory, federal court will not reverse pierce); *Floyd v. I.R.S.*, 151 F.3d 1295 (10th Cir. 1998) ("in the absence of a clear statement of Kansas law by the Kansas courts, we

{00468958;v2}

will not assume that such a potentially problematic doctrine already has application in that state"); *Estate of Daily*, 178 B.R. at 845-46 ("cases allowing a trustee in bankruptcy to pursue reverse alter ego claims, *without a state law basis,* must be viewed with caution") (emphasis in original). Consequently, there are no facts or circumstances under which the remedy sought by the Committee would be granted by a Delaware court. But even assuming, *arguendo*, that the remedy existed under Delaware law, it would require facts implicating the "control or instrumentality" doctrine, which the Complaint fails to allege.

**B.      The Requirements of the "Control or Instrumentality Doctrine."**

As noted above, *Irwin & Leighton* is the only Delaware case in which the court recognized a theory under which an entity controlling another entity could be liable for the latter's debts even though there was no parent-subsidiary relationship between them. That theory, the "control or instrumentality doctrine," requires that the following elements be established: (1) that the defendant entity assumed "actual, participatory, total control" of the primary debtor corporation; (2) that the defendant entity proximately caused plaintiff harm through misuse of this control; and (3) that fraud or misuse was committed to justify holding the defendant entity derivatively liable. Moreover, the controlling entity had to have been directly or indirectly "active in the formation of the debtor corporation and was not simply an arms-length extender of credit[,]" and "the corporation was from the outset operated as an arm of the [controlling] party's (or [an] affiliate's) business." *Irwin & Leighton*, 532 A.2d at 987-989.

While the Defendants assume, as the Court instructed, that fraud or misuse of the corporate form has been well-pled by the Committee, none of the remaining elements of the "control or instrumentality doctrine" have been alleged in the Complaint. As to the first element, the Court's Letter instructs the parties to assume *the Debtor's* "dominion and control" over the

Non-Debtor Defendants. The Debtor's alleged control over the Non-Debtor Defendants is the linchpin of the Committee's Complaint, since the Debtor is not the "*de jure*" parent of any of the Non-Debtor Defendants. Nevertheless, this assumed control is not enough to state a claim. The control or instrumentality doctrine extends liability against a wrongdoing third-party only if *that party* exercised actual, participatory and total control over *the primary debtor entity*. Thus, to assert a proper claim under this doctrine, the Non-Debtor Defendants would have had to be the controlling parties, and the Debtor the controlled party. But the Complaint asserts exactly the opposite. Therefore, the first element of the "control or instrumentality doctrine" cannot be satisfied.[7]

Even if control by the Non-Debtor Defendants had been asserted, the Complaint is further devoid of any allegation that *the Non-Debtor Defendants* somehow proximately caused the creditors of the Debtor harm through misuse of control.[8] But not only is proximate cause not

---

[7] The notion that liability under this doctrine should only be imposed on the party exercising the improper control is consistent with the manner in which several courts have applied the reverse veil-piercing doctrine. Indeed, in the earliest cases to apply the doctrine of reverse veil-piercing, application of the elements – like the imposition of liability – was conducted in the reverse. In particular, while the traditional concept of veil-piercing requires some form of control by the parent corporation, the doctrine of reverse piercing was limited to only those "extremely rare" cases in which the evidence established that the *subsidiary* controlled the *parent*. *See Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929). Today, several courts adhere to the Second Circuit's approach to reverse veil-piercing and continue to require evidence of control by the subsidiary. In *Floyd v. I.R.S.*, 151 F.3d 1295 (10th Cir. 1998), for instance, the Tenth Circuit, viewing the IRS "as any other creditor seeking to pierce a corporate veil," concluded that it would be "hard, if not impossible, to argue for forfeiture of [the subsidiary's] assets through a reverse pierce...where the "premise of the IRS's position is that the effective subsidiary...was the dominated party." *See also Acree v. McMahan*, 276 Ga. 880, 882 (2003) ("outside reverse piercing is only appropriate in the rare case of a subsidiary dominating a parent").

[8] The Supreme Court of Delaware has stated that "proximate cause exists if a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1097 (Del. 2000).

{00468958;v2}

pled here, it was impossible to plead. How could Catholic Charities' or Catholic Cemeteries' or the Catholic Diocese Foundation's control over the Debtor, even if extant, have proximately harmed anyone? The Complaint makes no such allegation.

Finally, the Complaint contains none of the indicia that the *Irwin & Leighton* court recognized as necessary to the extension of liability to creditors. First, the Complaint does not allege that the Non-Debtor Defendants were active in the formation of the Debtor. Second, the Complaint does not allege that the Debtor was, from the outset, operated as an arm of the Non-Debtor Defendants. In fact, it alleges the opposite.

Lacking any allegation of the elements of a proper "control or instrumentality" claim (other than fraud, which the Court asked the parties to assume), Counts I and III of the Committee's Complaint are deficient.

## III. THE DELAWARE SUPREME COURT WOULD NOT LIKELY ACCEPT CERTIFICATION FROM THIS COURT UNDER DELAWARE SUPREME COURT RULE 41.

United States Bankruptcy Courts are not included in the Delaware Constitution's list of courts from which the Delaware Supreme Court may take certified questions of law. Del. Const. art. IV, § 11(8). Therefore, since the Delaware Supreme Court does not have jurisdiction to decide a question certified by this Court, the Defendants believe it would likely be futile for this Court to attempt to certify a question.

Section 11 of Article IV of the Delaware Constitution sets forth the subject matter jurisdiction of the Delaware Supreme Court, including that court's power to decide questions certified to it by other courts:

> Section 11. The Supreme Court shall have jurisdiction as follows: . . .
>
> (8) To hear and determine questions of law certified to it by other Delaware courts, the Supreme Court of the United States, a Court of

Appeals of the United States, a United States District Court, the United States Securities and Exchange Commission, or the highest appellate court of any other state, where it appears to the Supreme Court that there are important and urgent reasons for an immediate determination of such questions by it. . . .

The same courts, with no additions, are listed in Delaware Supreme Court Rule 41(a), specifying "Who may certify" questions of law to the court.

The history of Article IV, Section 11, indicates that its enumeration of courts is intended to be exclusive. A separate state supreme court was created by amendments to the Delaware Constitution in 1951. Randy J. Holland, *The Delaware State Constitution: A Reference Guide* 137 (2002). In the same year, the court was given "authority to determine questions of law certified to it from the Court of Chancery, Superior Court, and Orphans' Court[.]" *Id.* The Delaware Constitution has since been amended several times to add courts from which certified questions may be taken by the Supreme Court: in 1983, the United States District Court for the District of Delaware; in 1993, the highest appellate court of any other state and the Supreme Court, Courts of Appeals, and all District Courts of the United States; and in 2007, the United States Securities and Exchange Commission. *Id.* at 141;[9] 64 *Del. Laws*, c.180, § 1 (1983); 69 *Del. Laws*, c.2, § 1 (1993); 76 *Del. Laws*, c.37, § 1 (2007). The Delaware legislature has thus had several opportunities — most recently in 2007 — to add United States Bankruptcy Courts (which have existed since 1978) to the list if that is what the legislature intended. Its failure to do so would likely be taken as excluding from the Supreme Court's jurisdiction questions

---

[9] In his monograph on the Delaware Constitution, Justice Holland might appear to read the 1993 amendment more broadly than its language warrants. *Id.* at 141 (the Constitution was amended in 1993 "to permit all federal courts, including the United States Supreme Court . . . to certify questions of law to the Supreme Court"). However, it is clear from the context in which this statement was made that he was simply emphasizing the extension of the provision to cover other federal jurisdictions, since the immediately preceding sentence focused on the 1983 addition of only the District of Delaware. *Id.*

{00468958;v2}

certified by Bankruptcy Courts. *Cf. Teleglobe USA, Inc. v. BCE Inc. (In re Teleglobe Communs. Corp.)*, 392 B.R. 561, 597 n.11 (Bankr. D. Del. 2008) (Walrath, J.) ("Delaware Supreme Court Rule 41(a)(2) does not permit a Bankruptcy Court to certify a question to the Delaware Supreme Court.").

Given the constitutional limitation, the Delaware Supreme Court can be expected to refuse a question certified to it by this Court. *See, e.g., Brooks-McCollum v. Shareef*, 871 A.2d 1127 (Del. 2004) (refusing petition for certification by a litigant; "this Court will only accept certification from the state and federal courts specified in Rule 41"); *Draper v. Paul N. Gardner Defined Plan Trust*, 625 A.2d 859, 868 n.12 (Del. 1993) ("Under a recent amendment to Article IV, section 9, of the Delaware Constitution . . . the Delaware Supreme court now has jurisdiction to hear and determine questions of law certified to it by any Article III federal court[.]"). Therefore, the Defendants respectfully submit that it would be a waste of resources for this Court to attempt to certify a question of law to the Delaware Supreme Court.

## CONCLUSION

In the end, piercing the corporate veil fails as a theory here. It fails most fundamentally because there is no "veil" to speak of between entities having an independent corporate existence and no ownership relationship. It also fails because corporate veil piercing has always been used as a device to hold a controlling party liable for a misuse of that control to the detriment of a creditor. The theory pursued by the Committee here is not based upon that notion. Rather, it is based upon the desire to collapse the corporate walls between all the various defendants on the theory that the Bishop, as the ordinary of the Diocese, has effective control over all of them and, consequently, they should be treated as a single entity.

{00468958;v2}

Allowing the Committee to recover against the Non-Debtor Defendants on these facts would not only be utterly unprecedented – no case appears to have permitted affiliate piercing – but it would also utterly conflict with a bedrock principle of Delaware law. That is that controlling parties of non-wholly owned corporations are *fiduciaries* to those corporations. Taking assets from these corporations to solve their own problems would breach their fiduciary duties. Nor may controlling parties look to them to pay their own creditors. And charitable corporations are subject to especial scrutiny since the donations made to them are covered by an additional set of statutes to protect the money given by the donors.

Thus, the distortion of the remedy of piercing the corporate veil that the Committee seeks here may not be accomplished under Delaware law, which has always maintained strict limits on the types of circumstances under which corporate separateness will be disregarded. It would not only destroy the settled expectation of generations of donors, expectations that are currently protected by layers of statutory law and equitable principles, but it would fatally undermine Delaware's limitations on corporate fiduciaries.

For the foregoing reasons, the Defendants respectfully request the Court enter Judgment on the Pleadings in their favor.

| YOUNG CONAWAY STARGATT & TAYLOR, LLP | ASHBY & GEDDES |
|---|---|
| */s/ Patrick A. Jackson (#4976)* | */s/ Stephen E. Jenkins (#2152)* |
| John T. Dorsey (#2988) | Stephen E. Jenkins (#2152) |
| Neilli Mullen Walsh (#2707) | Richard D. Heins (#3000) |
| John J. Paschetto (#3766) | Philip Trainer, Jr. (#2788) |
| Mary F. Dugan (#4704) | Ricardo Palacio (#3765) |
| Patrick A. Jackson (#4976) | Toni-Ann Platia (#5051) |
| The Brandywine Building | Stacy L. Newman (#5044) |
| 1000 West Street, 17th Floor | 500 Delaware Avenue, 8th Floor |
| Wilmington, Delaware 19801 | Wilmington, DE 19899 |
| Telephone: (302) 571-6600 | *Attorneys for the Non-Debtor* |
| *Attorneys for the Debtor* | *Defendants* |
| Dated: December 20, 2010 | |

{00468958;v2}